UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

LUCINDA MILLER,　　　　　　　　　　　　CASE NO. 19-11253-JCO
　　　　　　　　　　　　　　　　　　　　　Chapter 13
　　　Debtor.

# MEMORANDUM OPINION AND ORDER SUSTAINING OBJECTION TO CLAIM

This matter came before the Court on the Debtor's Objection (Doc. 43) to Proof of Claim Number 15 filed by Steven and Krista Goguen, (the "Goguens") and the Response thereto. (Doc. 54). Proper notice of hearing was given and appearances were noted by Attorney Lacy Robertson as counsel for the Debtor and Attorney Jennifer Holifield as counsel for the Goguens. Having considered the record, the Objection, the Response, the Joint Stipulation of Facts and the arguments of counsel, the Court finds that the Debtor's Objection to Claim is due to be SUSTAINED.

## JURISDICTION

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 157, and the Order of Reference of the District Court dated August 25, 2015. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) (A) and (B).

## FINDINGS OF FACT

The parties submitted a Joint Stipulation of Undisputed Facts (hereinafter "Stipulation") in lieu of testimony, which this Court adopts and cites as set out herein. (Doc.71). On February

1

Case 19-11253　Doc 85　Filed 11/25/19　Entered 11/25/19 16:01:40　Desc Main
Document　Page 1 of 9

4, 2018, Lucinda Miller (the "Debtor") and the Goguens entered into a purchase agreement (the "Agreement") for property located at 3258 Newcastle Drive, Mobile, Al 36695 (the "Property"). (*Id.* at ¶1). The Agreement also provided for the Debtor to pay a $2,500.00 security deposit to lease the property from the Goguens until the purchase could be consummated. *(Id)*. The Debtor tendered a check (the "Check") to the Goguens for the first month's rent and security deposit and moved into the Property on February 7, 2018. *(Id.* at ¶2). After the Debtor took possession of the Property, the Check was dishonored due to insufficient funds. (*Id.* at ¶3). The terms of the Agreement required the Debtor to pay monthly rent and transfer utilities into her name. (*Id.* at ¶4). The Debtor never paid rent, transferred the utilities or rectified the dishonored check. (*Id.* at ¶5). On April 27, 2018, the Goguens obtained an eviction order. (*Id.* at ¶9). On May 23, 2018, the Goguen's evicted the Debtor from the Property. (*Id.* at ¶12). The Debtor commenced this bankruptcy case on April 16, 2019. (Doc. 1). The Goguens filed proof of claim 15 (the "Claim") in the amount of $14,849.62, for unpaid rent, late fees, utilities, security deposit and eviction expenses. The Goguens assert that $2,500.00 of the Claim is entitled to priority under 11 U.S.C. 507(a)(7) based upon the failure of the Debtor to pay the security deposit. The Debtor contends that the entire Claim should be treated as general unsecured.

## ISSUE

Whether 11 U. S. C. §507 (a)(7) entitles a former landlord of a chapter 13 debtor to a priority claim for an unpaid security deposit due from the debtor under a residential lease.

2

Case 19-11253    Doc 85    Filed 11/25/19    Entered 11/25/19 16:01:40    Desc Main
Document      Page 2 of 9

# CONCLUSIONS OF LAW

## *Allowance of Priority Claims in Bankruptcy*

Proof of claims filed in accordance with the Bankruptcy Rules constitute prima facie evidence of the validity and amount of the claim. Fed.R.Bankr.P. 3001(f); *Green Tree Acceptance Inc. v. Calvert (In re Calvert),* 907 F.2d 1069, 1071 (11th Cir.1989); *In re Britt*, 199 B.R. 1000 (Bank. N.D. Ala. 1996) (citing *In re Fullmer,* 962 F.2d 1463 (10th Cir.1992); *Matter of Fidelity Holding Co., Ltd.,* 837 F.2d 696, 698 (5th Cir.1988). A proof of claim is deemed allowed, unless a party in interest objects. 11 U.S.C. §502(a). The general goal of bankruptcy law is to effectuate an equitable distribution of the debtor's estate among claimants. *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d 98, 100 (2d Cir.1986). Priority should not be afforded to a claimant unless it is founded on a clear statutory purpose. *In re City Sports Inc.*, 554 B.R. 329 (Bankr. D.Del 2016). The Bankruptcy Code delineates ten categories of claims that are allowed priority treatment. 11 U.S.C. §507(a). These exceptions are based upon a showing of special circumstances or special need. *City Sports* at 333. The burden is on the party seeking priority status to prove its claim qualifies. *In re FBI Distrib. Corp.*, 330 F.3d 36, 42 (1st Cir.2003); *In re Nat'l Steel Corp.*, 321 B.R. 901, 905 (Bankr.N.D.Ill.2005); *In re Heritage Village Church and Missionary Fellowship, Inc.*, 137 B.R. 888, 892 (Bankr.D.S.C.1991)); *In re Terra Distrib., Inc.*, 148 B.R. 598, 599–600 (Bankr.D.Idaho 1992). The priority statutes should be construed strictly and narrowly. *Id.; See also, Boston Reg'l Med. Ctr. Inc. v. Mass. Div. of Health Care Fin. and Policy,* 365 F.3d 51, 57 (1st Cir.2004); *Amalgamated Ins. Fund,* 789 F.2d at 100; *WW Warehouse*, 313 B.R. at 592; *In re Olga Coal Co.*, 194 B.R. 741 (Bankr.S.D.N.Y. 1996); *In re Pittston Stevedoring Corp.*, 40 B.R. 424, 428–29 (Bankr.S.D.N.Y.1984).

The Goguens' Claim does not meet the standard for priority treatment. In this case, the Goguens filed a timely unsecured claim in the amount of $14,849.62 and designated $2,500.00 as entitled to priority pursuant to 11 U.S.C §507(a)(7). There is no dispute that the Debtor owes the Goguens $2,500.00 for an unpaid security deposit pursuant to terms of a lease. However, the Debtor contends that priority treatment is not appropriate. This Court agrees with the above cited authorities that the priority statutes should be construed narrowly to promote the equality of distribution among creditors and the burden is on the claimants to prove their claim qualifies for priority treatment. As hereinafter discussed, in light of the forgoing and upon consideration of the plain language, statutory intent and legislative history of 11 U.S. C. §507(a)(7) the Goguen's cannot meet that burden.

*Plain Language of 507(a)(7)*

To resolve a dispute concerning statutory interpretation, this Court must begin by examining the plain language of the statute. *See Guarracino v. Hoffman,* 246 B.R. 130, 132 (D.Mass.2000) (citing *United States v. Ron Pair Enters. Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)). The first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute. *United States v. Fisher,* 289 F.3d 1329, 1337–38 (11th Cir.2002), *cert. denied,* 537 U.S. 1112, 123 S.Ct. 903, 154 L.Ed.2d 786 (2003). A presumption exists that Congress said what it meant and meant what it said. *United States v. Steele,* 147 F.3d 1316, 1318 (11th Cir.1998) (en banc).

When the import of the words Congress has used is clear, there is no need to resort to legislative history. *United States v. Weaver,* 275 F.3d 1320, 1331 (11th Cir.2001), (quoting *Harris v. Garner,* 216 F.3d 970, 976 (11th Cir.2000) (en banc)), *cert. denied,* 536 U.S. 961, 122 S.Ct. 2666, 153 L.Ed.2d 840 (2002). Hence, if the language is clear and unambiguous, the

4

inquiry ends. *Id.*; *see also, In re Salazar,* 430 F.3d 992, 995 (9th Cir.2005) (citing *Or. Natural Res. Council, Inc. v. Kantor,* 99 F.3d 334, 339 (9th Cir.1996)). Additionally, if the statutory language is not entirely transparent, traditional canons of construction should be employed before reverting to legislative history. *CBS Inc. v. PrimeTime 24 Joint Venture,* 245 F.3d 1217, 1225 (11th Cir.2001). In such endeavor, the meaning of a particular statutory provision may be gleaned from the broader, statutory context.". *Id.* Section 507(a)(7) of the Bankruptcy Code provides in pertinent part:

> (a) The following expenses and claims have priority in the following order:
> * * *
> (7) Seventh, allowed unsecured claims of individuals, to the extent of $2,850*[1] for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided*.*

11 U.S.C.§ 507(a)(7) (the "Statute").

A plain language reading of the Statute provides a priority claim to individuals who deposit funds prior to the debtor's bankruptcy filing in connection with the purchase, lease or rental of property or purchase of services, for their personal family or household use which are not delivered or provided. *Id.* The terminology "arising from the deposit before the commencement of the case" contemplates delivery of a deposit *to the Debtor* prior to the bankruptcy filing. A full reading §507(a)(7), supports such interpretation as it also limits the availability of priority claims to instances in which the benefits sought to be obtained from the deposit "were not delivered or provided.". *Id.* It is generally recognized that the priority afforded by 11 U. S. C. §507(a)(7)[2] arises in the context of deposits made *to* bankrupt debtors.

---

[1] This amount adjusts in accordance with 11 U. S. C. §104.
[2] Since its original codification in 1978, this section has been successively denoted section 507(a)(5) (during the period 1978–1984), section 507(a)(6) (during the period 1984–2005), and 507(a)(7) (during the period 2005—

5

*Guaracino v. Hoffman*, 246 B.R. 130, (D. Mass 2000)(holding bankruptcy priority statute allowing priority to unsecured claims for the recovery of sums <u>deposited with the debtor</u> in connection with the purchase, lease or rental of property is not limited solely to purchase money deposits); *In re River Village Associates*, 161 B.R. 127 (Bankr. E.D. Pa. 1993)(holding each tenant's claim <u>against debtor-landlord</u> for security deposits is a § 507(a)(6) priority claim*); In re Continental County Club*, 64 B.R. 177, (Bankr. M.D. Fla. 1986)(holding husband and wife were entitled to priority <u>claim for deposit made to the bankrupt debtor</u> under a contract to purchase a mobile home); *In re WW Warehouse, Inc.*, 313 B.R. 588 (D. Del. 2004)(unsecured claims by consumers for sums <u>paid to the bankrupt debtor</u> for unredeemed gift certificates were in the nature of claims entitled to be paid on a priority basis). Additionally, the term "deposit" is generally understood to mean the act of giving money to another who promises to preserve it or use it and return it in kind; the act of placing money in a bank for safety and convenience and the money so given. *Black's Law Dictionary*, 504 (9th Ed. 2009). Such definition in the context of the Statute suggests entrustment of the funds with the Debtor as giving rise to the priority claim.

As explained above, the function of the bankruptcy court is to distribute a bankrupt debtor's limited resources in as equitable of a manner as possible. To that end, it is incumbent upon this Court to construe 11 U.S C. §507(a)(7) strictly and narrowly. In this case, the Goguens did not deposit monies with the Debtor, nor did they purchase goods or services from the Debtor for their personal, family or household use. Hence, the debt owed to the Goguens does not fall within the plain language of the Statute. The purported basis for the Goguen's claim does not

---

present). 4–507 Collier on Bankruptcy P 507.LH. The text of the section has not significantly changed since its initial codification. *Compare* Bankruptcy Reform Act of 1978, Pub. L. No. 95–598 (HR 8200), 92 Stat 2549, November 6, 1978, § 507(a)(5) with 11 U.S.C.A. § 507(a)(7) (West). In this discussion, the section is referred to as section 507(a)(7) regardless of how it was cited in the referenced case law.

demonstrate a showing of the type of special circumstances or need which the Statute is intended to protect. Interpreting 11 U.S.C. 507(a)(7) to entitle landlords to priority unsecured claims simply based upon money owed under a lease agreement would not only be contrary to the Statute's plain language but would lead to an absurd result. Debtors typically elect bankruptcy because of their inability to pay debts and are often in default of their contractual obligations to a myriad of unsecured creditors. Mere failure to pay pre-petition indebtedness under a lease for a security deposit, does not constitute a basis to elevate such unsecured claim over the claims of other unsecured creditors. Pursuant to the plain language of the Statute, it is the inverse situation, wherein a tenant delivers a security deposit to a landlord which subsequently files bankruptcy, that would yield a priority claim to the tenant. As the Goguens' claim does not fall within the parameters of the plain language of §507(a)(7) or the apparent statutory intent thereof, priority treatment is not warranted.

*Legislative History of 11 U.S. C §507(a)(7)*

Despite this Court's finding that the plain language of 11 U.S.C. 507(a)(7) is not ambiguous, with regard to the particular issue before it, in the event of any lingering scintilla of doubt, the Statute's legislative history supports this Court's determination that the Goguens' claim is not entitled to priority treatment. Courts considering the Statute's legislative history, in their evaluation of other facts scenarios, have concluded that the purpose of the priority afforded by 11 U.S. C. §507(a)(7) is to protect consumers who make deposits for goods or services that at the time of the bankruptcy filing have not been provided. *In re Palmas del Mar Country Club, Inc.*, 443 B.R. 569 (2010)(citing Alan N. Resnick and Henry J. Sommer; Collier on Bankruptcy, ¶507.09 (16th ed. Rev'd 07/2010). The House Report regarding adoption of §507(a)(7), reflects:

> [The section] has been added as a result of testimony before the subcommittee on civil and constitutional rights concerning problems that

consumers have encountered with bankrupt retail businesses with whom consumers have deposited money for goods or services. . . because of his ignorance and his inability to bargain with a retail merchant, [the consumer] is unable to do a credit investigation or obtain special terms from the merchant, as a true creditor may do. A recent example is the W.T. Grant bankruptcy. All customers who held "Grant Script" [*sic*—should be "Scrips"] have essentially lost their deposits. In order to remedy this problem and to reorganize the position of consumer creditors as different from those of business creditors, the bill provides a priority for consumer creditors of a bankrupt business . . .

*In re City Sports, Inc*, 554 B.R. 329 at 339 (Citing House Report at 188, *as reprinted in* 1978 U.S.C.C.A.N. 6148–49).

Further, the 1972 *Columbia Law Review* article, which was an impetus for the enactment of the statute, explained the context in which consumer protection is needed and delineated the type of consumers deserving of protection by stating in part:

Insolvent retailers commence proceedings for arrangements or straight bankruptcy, leaving several classes of unsatisfied consumers with little by way of remedy. Among the types of buyers commonly affected are those who prepaid for continuing and future services (such as correspondence school lessons); those who prepaid for goods; those who partially prepaid for services or goods (for example, purchases made on the lay-away plan); those who possess merchandise certificates or who have returned goods for credit; and those who have left their own goods with the company to be repaired.

*Id.* at 339, 340 (Citing Schrag & Ratner, *Caveat Emptor-Empty Coffer: The Bankruptcy Law Has Nothing to Offer*, 72 Colum. L.Rev. 1147 at 1148 (1972)).

This Court's finding that the Goguens are not entitled to priority treatment is consistent with the underpinnings of the Statute as evidenced by its legislative history. The Goguens do not fall into the same category of persons which the Statute was enacted to protect. They are not consumers in a disadvantaged bargaining position. They did not lack the ability to acquire relevant information regarding the financial condition of the Debtor prior to entering into the Agreement. Additionally, they could have easily required a cashier's check or other form of collected funds for the security deposit.

Therefore, review of the legislative history of 11 U.S.C §507(a)(7) affirms this Courts determination that the Goguen's claim is not entitled to priority treatment.

## **CONCLUSION**

In accordance with the plain language of 11 U.S.C. §507 (a)(7) as well as the statutory intent of the Statute as evidenced by its legislative history, this Court SUSTAINS the Debtor's Objection to Claim and hereby ORDERS, ADJUDGES AND DECREES that Claim Number 15, filed by the Goguens, shall be treated as a general unsecured claim in its entirety.

Dated: November 25, 2019

_____
JERRY C. OLDSHUE, JR.
U.S. BANKRUPTCY JUDGE